Gentlemen, the next case is Harris v. Thompson in Massachusetts County Hospital District. Mr. Roth, you're up first. May it please the court. My name is Charles Roth. I represent the defendants' helms in this case. This is the ambulance case. In this case, I am asking this court to reverse a prior decision. The case before us involves an ambulance operated by the Massachusetts County Hospital District in Metropolis, which on an emergency call was struck in the side by the plaintiff's vehicle at an intersection. The plaintiff's vehicle was struck by the ambulance, and injuries to the occupants resulted. The defendant in this case raised at the first opportunity the governmental immunity statute by a motion to dismiss. The original count was negligence only. We pointed out, however, of course, that the Bradshaw decision of this court ruled that the Illinois Vehicle Code superseded the governmental immunity statute, and that in the Fifth District, negligence was a good basis to find liability against a governmental unit. Judge Williamson felt bound by that restraint and, of course, denied our motion, ordered us to file an answer. We did, raising the affirmative defense, and we did in each successive complaint that was filed an amended complaint. Subsequently, the plaintiff amended the complaint and added a count for willful and lawful. The only claim that reached the trial court to the jury was that of Mr. Harris. The mother, I should say the wife and mother of the other passenger, the daughter's claims were dismissed. At the close of the plaintiff's case, our motion, defendant's motion for a direct verdict as to willful and lawful, was granted. And, of course, the plaintiff appeals from that on his counterclaim, and I won't get into that. That is briefly the litigation history of this case. The Bradshaw decision was decided in 1998, and it was one of the first, well, it was the first decision that set off a series of decisions in the appellate court district, 1st, 2nd, 3rd, and 4th, on the same issue. Actually, the Bradshaw decision was somewhat of an abbreviation, because earlier, his court had decided that the Illinois vehicle code did not govern, and that the Immunity Act did govern a situation in which liability was attempted to be based upon conduct against a governmental unit. But Bradshaw's decision in 1998, it was a two-to-one decision. Justice Goldenhurst decided that the two statutes, on the one hand, the Illinois governmental immunity statute, which provides immunity except for willful and lawful, that statute, and on the other hand, the Illinois vehicle code, which said that all drivers, all drivers, all drivers, governmental and non-governmental, have a duty to use due care, or what Justice Goldenhurst determined as negligence. And Justice Goldenhurst said that when confronted with these two, and he determined that they were conflicting statutes, that the more specific statute should control, which was more specific to the facts of this case. Justice Goldenhurst decided, I believe, and I have to say, frankly say, wrongly, that the statute of the Illinois vehicle code, which covers all drivers of all vehicles, was more specific than the governmental immunity statute, which provided only immunity to governmental organizations. And that, as a result, liability can be predicated upon negligence. That decision, as we noted in the brief, was not wrongly received anywhere. In fact, the Bradshaw decision was rejected by name by every single court that had a chance to consider it. And the reason is… Except the Supreme Court. The Supreme Court has not, Your Honor, but they came close, but they didn't hit on this. Was there a PLA taken? No, sir. Not from Bradshaw? There was not. And in all these other districts? None. The losing side didn't want to side with Bradshaw and take it up to the Supreme Court either? The reason that the other courts said, no, sir, you're wrong, the Fifth District has it wrong, is this. The other courts view these two statutes as working in, quote, their own sphere. And the sphere that each one of them operates in is not conflicting. And the reason that they're not conflicting is this. The Illinois vehicle code sets out a duty that all drivers of vehicles, all drivers of vehicles, must adhere to using due care. On the other hand, the Illinois governmental immunity statute says if you're sued, if you're sued, you are only liable for willful and unlawful conduct. It doesn't say that, no, you should be, that you don't follow the Illinois vehicle code. It says instead that if you don't, but if you are sued, you are only responsible for willful and unlawful conduct. All of the appellate court, except the Fifth District, follow that rule, and that is the rule throughout the state of Illinois, except in the Fifth District. Now, that approach is different from the one taken by Justice Goldengrass. Because Justice Goldengrass said, no, there's a conflict between the two. The First, Second, Third, and Fourth Districts all said, no, there's no conflict. This one operates over here as to the duty, but this one over here, the immunity statute, gives you immunity from liability under certain circumstances. And so they found no conflict. Now, we have suggested in our brief that this court may still view to support the conflict position, different from the other appellate courts, and still say, no, that they are in conflict. And if that is the case, and you did it, this court did it subsequently later, and I'll get into that in a moment, that when you look at two statutes in conflict, you must try to harmonize them, and the first rule is, which one is more specific, which one of the two statutes is more specific to the situation. And here I will argue to the court, as the Supreme Court has argued also in another similar case, that the more specific governmental immunity statute, with respect to a governmental ambulance owned by a governmental organization being driven by a governmental employee, that that immunity provides, unless there is lawful and lawful conduct. Now, we have argued to the court that this was an abrogation for the fifth district. In 1997, Bozen v. City of Collinsville, cited in our brief, was a fifth district case in which there was an accident with a police officer's vehicle. Now, this was in 1987. This was before Bradshaw. And in that case, it was a two-to-one decision. The two judges whose opinion was decided in that case said the governmental immunity statute controlled. The dissent said, no, it is the Illinois Vehicle Code which controls. So you have the seed, I will say, of the thought that the Illinois Vehicle Code would apply, and it was in a dissent in 1967. And interestingly… Who was the dissenter? I'm sorry, ma'am. Who was the dissenter? Lewis J. Concurs, actually. So there was no dissent? No, sir, you're right. I'm sorry. It was concurring. But he thought that the motor vehicle statute controlled. But we raised this case to the court for this reason. In that situation, we had a bench trial. We did not have a jury trial. And it was a claim by a… Is that case cited in your brief? Yes, sir. But it's not in that particular section. It is in the section in our reply brief with regards to the Woelfel and Watten conduct. Okay. I'll find it. And in that, that case said that the policeman at that point did not use a siren, went to a stop sign, and was, the trial judge said, was in excess of the speed limit, and yet there was no Woelfel and Watten conduct. That's where we used that particular case. But I pointed out that it preceded the Bradford case. Now, the appellate court cases originally started to review this situation by pointing out the dissent in that case. Justice May pointed out that there was a prior decision, a second district in 1994, the Postics case. This is on page 9 of our brief. Second district. And it compared also the vehicle code and the Illinois immunity statute. And that decision preceded the Bradshaw case. And in it, the court determined that where you have these two statutes, one of them determines what your duty is, but the other one says, on the other hand, but if you are sued, if you raise this objection, and if you do it properly, you have immunity. Now, in this case, I don't believe there's been any question that we have raised it. We have raised it at every opportunity we could, and there's no question that we have a governmental organization that's all been pled, and it's not been raised at any point. Now, the Postics case relied upon an Illinois Supreme Court case, Your Honor, and this is what I was getting on page 11 of our initial brief. This is Henrichs v. Libertyville High School. This was a 1998 decision. And in it, it did not compare the two codes that we have before us today, but they did compare that tort immunity act that is in this case versus the Illinois school code. And the Supreme Court said, we're going to look to the one that is most specific to the situation, and that the school code applies to one group, but that the tort immunity act applied to public schools only, and that it operated in its sphere alone. It only applied to the public schools. Well, the same argument can be made, I think, with respect to the governmental immunity act. It only applies… Did it talk about general versus specific or two different spheres? Your Honor, I think they're intertwined, and they can be intertwined. I think both theories work together. Actually, they come to the same conclusion with one exception, and that was Justice Goldenhurst when he tried to do it differently, and he came up with a different result. Everyone else has looked at this, and they said, we want to go with the one which is more specific to the situation. The Carter decision was next. Own sphere of activity. The Sanders decision, own sphere of activity. Young decision, own sphere of activity. This is Lansing, 2003, in my district, the third district. It's the last one, own sphere. All of them taking the same general approach to this. On the one, you have the duty outline, but here, on the other hand, you have the immunity, if raised properly. Now, does this say, and this was approached, frankly, we don't need to get to this issue, but does that mean that if that ambulance driver sues somebody, suppose he's injured, and he was in this case, but suppose he sued someone, what is his standard of care? The Hevers case, the very first case that we cited on this point, says no, it does not. He is held to that care, to due care, under the Illinois appeal code. It only acts as an immunity when you are in fact sued, when you, when the governmental unit is sued, when the governmental driver is sued, when the hospital is sued, when the police department, fire department is sued. We looked further. We looked into the federal courts, and the Seventh Circuit Court of Appeals in a decision, 2003, in the Carter case, went through all the cases, the same thing that I've done here, and said, we're not going to follow the Bradshaw decision. It's just, it's not going to be the situation. Now, I said that this court even later changed its view. At page 15 of our brief, seven months after deciding Bradshaw, this court, in Petty v. Crowell, 1999, considered a case involving the city of Anna, Illinois, and an employee, and there you have these codes in conflict, they thought. The specific immunity is granted in the correction code or, or the vehicle code. Now, why do we put that? We don't have the correction code involved in this situation, but what we do have, we've got the same vehicle code. Justice Goldenhurst said that same vehicle code was more specific than the limited governmental immunity act. Seven months later, this court decided, no, it is not. It has general provisions of the vehicle code. Different judge, no dissent. And the reason for that is, is that general code over here with its duties applies not only to governmental units, but also to non-units. And when looked at the specific provisions of the correction code, this court said the correction code applies. That's not the last time you did. In the Keener case, which was, I will say, subsequently, we note in our brief, subsequently reversed by the Supreme Court on other grounds, not related to this. Keener versus the city of Heron, they noted again what they thought was a conflict between two statutes. And they said that the cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. And there is no question but what that governmental immunity statute, very clear, your governmental organization, government employee, and you're in the course of an emergency, all of which is admitted in this, you have immunity except for willful and willful conduct. Okay. The next section of our brief we then went into because we anticipated a point coming up here. We said, well, they're going to say, yeah, that's true, it's going to be reversed, but not for our case. Let's make it prospective only. Let's do it in the future. After all, I think the language they used was, quote, some 20 years, as if it always makes it a longer period of time to say some before a time period. But therefore, we shouldn't apply it to this case. In our reply brief, we noted the general statutes with regards, excuse me, general rules with regards to application when there is a reversal. And the Supreme Court has made it clear, it generally, the general rule is, it is retroactive and prospective. That's the general rule. And in our brief, we took perhaps the three most significant reversals that the Supreme Court has made and in each case applied it to the case at hand. The first is Monitor v. K-9 Community Unit District. Boy, talk about a major change. 1959, it gave rise to the governmental immunity statute as a result of that decision. But they made it. You'll have time for rebuttal, Pat. Thank you. May it please the Court, I'm Mark Johnson. I'm here on behalf of the Plano-Applewood-Eva-Harris family. The issue today is, can you reconcile provisions of the Monitor v. K-9 Community Act? The answer is no, you cannot. Bradshaw is correctly cited. I once had an older, wiser attorney tell me, be wary of the attorney who comes to court to argue a point and brings this one case. Today, I have the luxury of bringing one case. I have the Bradshaw case, which is directly on point and precedent in this district and buried plainly, even down to the county, state, and courthouse. We're handling service versus the city police, but we have a case directly on point. And for those reasons, this verdict should be affirmed. That's not the reason why I'm up here today. I could have done that with way more argument. But I'm here to talk about what the problems are with Carter and the other districts that fell off step into them and why they made the wrong decision. And they did. And here's what it comes down to. Carter relies upon Heinrich, the Supreme Court's decision in Heinrich, to support their point of view. And they talk about the school code, immunity, standards of care compared to the ones in the Tort Immunity Act. And the distinction they came down to was that they were in the same sphere of influence. And I have to confess, when I first started dealing with this issue, I could see two or three different spheres I was trying to struggle with. But I think what it comes down to here, what Carter relied upon, which is incorrect in this application here, is that there was a difference between the school code that talked about all teachers, public and private, and the Tort Immunity Act, which was public. And there's another distinction, and that is the school code did not impose any kind of duty like the motor vehicle code does. There's two reasons why Carter is bad law and why it should not be followed. And that is, one, the duty, there's a distinction between a duty and an immunity. The motor vehicle code, very plainly set forth in several occasions, particularly the ones we cited, is 11-205 and 11-907. It says it applies to authorized emergency vehicles. And it says it applies to those that are operated or owned by governmental entities, like this one. And I disagree with counsel for the appellant when he talks about the fact that the motor vehicle code applies to all vehicles. When you look at 11-205A, and I quote the very end of it, when it says who it applies to, it says, except as provided in this section and subject to specific exceptions as set forth in this chapter with respect to authorized emergency vehicles. And you follow it now, and it says, the foregoing provisions do not, and this is subparagraph B, do not relieve the driver of an authorized emergency vehicle from the duty of driving with due care. That's a duty. Plain and simple. It says it applies to authorized emergency vehicles. The other portion of the motor vehicle code, which is section 11-05, plainly defines an authorized emergency vehicle as any municipal corporation, in this case the district. It's very plain that the legislature intended the duty of due care to apply to an ambulance driver, whether it was public or private. Isn't that the distinction the opposing counsel is trying to make? One of the distinctions is that that makes it more general since it applies both to public and private, as opposed to the act, the Immunity Act, just pertains to the public. The Immunity Act would only apply to public vehicles. But if you look, Judge Bonner, if you look at 11-05, authorized emergency vehicles are only public vehicles. They're no private vehicles. When you look at 11-05, it is all public vehicles. They're either owned or operated by a municipal corporation of some sort. That's the definition the Illinois legislature put on authorized emergency vehicles. That's the same phrase used throughout 11-05. But the vehicle code pertains to public and private ambulances. As it says though, except with respect to the specific exception set forth here in 205A, and those exceptions I'm submitting to you are what it says. You've got a duty of care. You've got to drive and operate your ambulance with an appropriate duty of care. The interesting thing is that when I looked at Carter and I looked at the other ones that fell out, you don't get a lot of independent analysis in the other districts that fell in behind Carter. They pretty much seized on Heinrich and said, okay, Heinrich said it was the same sphere, so this must be the same sphere, and we're going to follow it. But it failed to recognize the distinction between the school code had no imposition of a duty like the motor vehicle code did. That's a separate sphere of influence. And it did not have a specific reference that the legislature took care to look at and say, we're going to apply the provisions of due care in the motor vehicle code to authorized emergency vehicles, which we define as only public vehicles. Nothing could be more absurd than for the legislature to say on one hand, you have a duty to operate an ambulance with due care, and on the other hand we're going to MDI you from that duty. That's a conflict. The Bradshaw Court, and I've got to confess I was disappointed not to see Judge Goldberg sitting up here on the panel. I bet he wasn't. I'm sure. And they do them random. I'm sure you did. But as a consequence, they did not have Judge Goldberg. You're saying you'd rather have Goldenhurst than me up here? I'm not going to wait too long to say that. But that's the distinction that Judge Goldenhurst got right. That was a separate sphere of influence. It would be absurd, you can't rationally harmonize the legislature imposing a duty without harmonizing the behavior. Now, the interesting thing is, the Supreme Court came along afterwards, and I think this is dispositive of this case, in Abruzzo and Moore. Those are two cases cited in our brief. And both of them, Abruzzo looked at the Emergency Medical Services Act and Moore did the Domestic Violence Act. Very similar kinds of dynamics going on. Both situations the Supreme Court said, look, there's a conflict. The test is, do the two statutes apply to the allegations of the plaintiff's complaint? They do. They did in those cases, and they do here. This ambulance driver was operating a vehicle in both respects. And that's why my partner, John Schneider, who tried the case to a successful verdict, made the decision to plead both causes of action. That and to hedge our bets, depending on what the development of the law might or might not have been. And had Judge Williamson not directed the verdict on the Wolf and Warren count, I think we would never be here. I'll address that in a second. But back to Abruzzo and Moore. The true test is, does it apply? Do the allegations in our complaint apply? Sure they do. We're looking right at the Motor Vehicle Code. It says, authorized emergency vehicle has to exercise ordinary character. It says at the top, while this section applies to all vehicles, it's subject to specific exceptions set forth in their hands. The legislature made a very important point. That was never raised in the bar. What else was never raised in the bar was the distinction between a duty and an immunity. You know, it would have been different if the school code and Heinrich had said, we're going to impose a duty of ordinary negligence on school teachers. And then the Tort Immunity Act came along later and said, we're going to immunize that. We'd have the same situation. I don't think Heinrich would have found the way it did. The reason it was able to is because it was in the same basic vein. It was comparing two immunities with a school teaching context. One was a little bit greater than the other. But that's not the case here. We have a clear legislative, and that's a part of the rule. Let's get back to what the legislature says. You cannot look at this code, this Motor Vehicle Code, and say the legislature didn't take great pains to define an authorized emergency vehicle as being a public entity and didn't go to great pains to say, except that we set forth here and it applies to everybody. And then when they go down and you look, B doesn't talk about an authorized emergency vehicle, 11205, but C does. It says, here's how they have to go through stop signs. Here's how they have to go in long-way directions. Here's when they can speed. And here in the formality of duty, it says, authorized emergency vehicles. That's what they're using. It could not be clearer that the Illinois legislature intended ambulance drivers not to run recklessly throughout the streets, but to exercise ordinary care for the safety of others. And Abruzzo and Moore make that clear. And that test, if you follow it, works here. So, does your office rightly look to, when I have two competing statutes or Abruzzo and Moore, when the statutes apply to the same allegations in a complaint, what do we do? We resort to statutory construction, rules of statutory construction. Can you read them together? Not here you can't. You know why you can't more responsibly here is if you have to totally write out and say this in our brief, you'd have to ignore all these questions of duty if you're trying to read these two statutes in paramaterial. The other thing is, if you're giving clear effect to the Illinois legislature's language, I submit to you there's several, as I've already argued, points where they say authorized emergency vehicles are supposed to exercise ordinary care. Privacy is the next rule of construction we submit supports this decision. The motor vehicle code has been amended numerous times, looked at numerous times more recently than the tort of union. Every time the Illinois legislature, in light of the Bradshaw rules and the other four districts, has still chosen to adopt the same language which expressly provides the duty of care to those authorized vehicles. And again, the specificity argument that Judge Goldenhurst rightly relied upon is set forth in the decision of Bradshaw, and more importantly, is mimicked in a brute self, and more by the Illinois Supreme Court after Bradshaw and these other decisions in the other districts. For those reasons, Bradshaw is still good law. Nobody argued these points in Carter or the other four districts. They just went lockstep with the rest of them. There's a duty in the motor vehicle code that didn't exist in a lot of places. That was a firm new place there by the legislature that's clear as a bell that you cannot reconcile. You can't harmonize up there. How hard can you try? Now, like any good lawyer who tries to hedge his bet and hang on to my partner's $600-some-thousand-dollar verdict, I've got an alternative argument here, and that is we want the, in the event, we hope the unlikely event, the court would find Bradshaw not to be good law, we do want it to have prospective application. And the law is clear on that. If it's a reversal of something that's been on the books for some time, that's a ground so that the court can exercise that discretion. It balances the equities. I always translated that to mean, is it fair? This case was investigated, prosecuted. The time and money that was spent based upon Bradshaw would be inherently unfair to deny a gentleman his verdict for those serious injuries he received. There was no mention of the Barnes-Jewish Hospital bill, which was briefed. The foundation was clear on that. The judge was at his discretion to admit that. He was at his discretion. I do want to comment quickly, if I may, on the error Judge Williams sent in directly in the verdict of the willful want count. Where there's, in these cases, some of them, with all due respect to the other public districts, seem to be all over the place. Some seem to confuse the fact that willful want comes in two flavors. You can intentionally intend something, or you can act in a way that shows utter or reckless disregard for the safety of others. That's the essence of what this is. We are arguing, and did tell Judge Williamson, that it was a disregard for the safety of others. And there are two components to that. And one of that is the defendant engaging in an activity that would alert a reasonable person that a substantial danger existed. And two, they fail to take reasonable precautions in light of that risk. I cannot imagine a case more appropriate for a willful want submission than this one. And would this court then remand it back? Assuming we didn't want to follow, assuming we thought the Bradshaw was wrongly decided, then it would be left up to this court then to reverse that judgment, but remand it back for a new trial based upon willful want. That would be right. First, I'd like to get a hold of Bradshaw. Second, I have to be prospective, so you didn't get to this point. If I say I've got three layers here. Third, I want you to, if I get to that last ditch defense, then it's a willful wanton that should be remanded for a new trial. And I was briefly commenting, here are the five factors that I set out in the brief. You've got to visibly, this testimony directly from the ambulance driver. He can't see oncoming traffic. That does not have to stop something. Mr. Harris does not have to stop. He's got to stop something. He can't see in the intersection until he's actually in the intersection. So he's got an obstructed, visibly obstructed intersection. He's got a stop sign he's got to stop at. He knows the other lanes of traffic going in the direction of Mr. Harris has got to ride away. And more importantly, he chooses to turn off his timer before he enters the intersection. And there's testimony that he was going in excess of the speed limit. Those five factors, when viewed in the light bulb's favor with a non-moving parking, without a doubt. I can't imagine a case being more. If you take away somebody's sight and sound, they can't taste or smell the car coming the other way. He can't see. He's not going to stop. He'd run off the stop sign. He's running the stop sign. The only way he could have ever remotely given any kind of warning or taken a precaution would have been to get the siren on. He chose not to. He took away any chance for himself and his family from this collision. As a consequence, and I've already mentioned it, we want the court to refer Bradshaw. Of all this district, for all this time, it's still good law for the reason that Carter and his progeny got it wrong and disapplied the hiring decision and approved so. And more, the Supreme Court will make it even that much clearer that Bradshaw was right. We want the case to have prospective application and affirm the verdict. And finally, if we, God forbid, we get to that part, we want the case remanded on the question of Wolf and Wong. Thank you all for your time. Thank you, counsel. Any rebuttal? Yes, sir. Counsel, for the plaintiff, it's indicated that he cannot rationalize duty and immunity. And that's the reason why we have a duty statute over here and a limited immunity statute on the other side. And yet, all of the other courts    over here and a limited immunity statute on the other side. And yet, all of the other courts and when counsel tells you that none of them just lockstep followed the Carter decision, they didn't understand the way he interprets duty and immunity, I must say that that can't be the case because in each of those appellate decisions, this court's decision was mentioned by name and the argument was made, the same argument that was made by the plaintiff's counsel and counsel says that there is a difference between a duty and immunity and we said that's exactly correct and now you're getting it, that that duty statute over here says yes, you have that, but if you are sued and if you raise the immunities and if you follow and you do the things properly and if you are a governmental unit, you have the immunities and that's why that legislature has enacted it and it cannot be up to courts or any other body because by the Illinois Constitution, by specific provision of the Illinois Constitution, the legislature determines governmental immunity. Now, counsel has indicated to you that well, he wasn't there at the trial but by golly, he can't understand why this judge would rule in the manner that he did. I will tell him why this judge did, why he granted that direct verdict. The evidence in this part of the evidence is unrefuted. There isn't a question of fact about it. There is one question but I'll get into it in a moment. First of all, all the emergency lights were on and oscillating and we've all seen emergency vehicles. This was no different. The photographs are in the file. They were identifying numerous lights on the side and the front of the vehicle at all times operating and oscillating. The driver, Mr. Thompson, testified unrefuted. No question about this. No question that he slowed down as he approached the intersection. He was not going to go through. Third, he had his foot on the brake as he approached the intersection. Of course, he is slowing down. Fourth, he eased past the stop sign. There's no question that he did not stop at the stop sign. No question but that he did in fact go through it. You're saying there's no contradictory evidence in the record from the plaintiff or any of the plaintiff's witnesses? No, sir. I'm not saying that. You're not saying that? No, sir. There is. There is. But first, before I get to that, I want to get to these points. He looked, he said, both ways. And no one will say there's no contradictory testimony about this. He looked both to his left and to his right. The other vehicle was coming from his left. He got into the intersection. As a matter of fact, he was in the middle of the intersection when his vehicle, the ambulance, was struck in the side by the Thompson vehicle. He said, the driver of the ambulance vehicle said, in order to look both ways, I had to go through and look past an obstruction to the tree. And both, the driver and the plaintiff agreed, yes, there is an obstruction. But this driver had to go through it first. Did not see the vehicle. You're saying that he testified that anybody that would stop at that stop sign had to run the stop sign to see the oncoming traffic? He didn't say anybody, Your Honor. He said at night and at the time that the trees were an obstruction. Even if you stopped at the stop sign correctly. Wouldn't that even be Go ahead, I'm sorry. Anybody that stopped at that stop sign would have to gone into the lane of oncoming traffic there. He did not say that, but that would be a natural assumption. Yes, sir. I'm not, he didn't say that and it was dark and the trees are different and where there are pickup trucks in the area and that sort of thing. I'm not going to say that, but he said at that time and Mr. Thompson testified to that and even the plaintiff agreed to him. Yes. Now, Couldn't it be even more likely then that he was acting recklessly by turning his sirens off when he's approaching this obstructed area? And didn't he turn them off like immediately before he went into the intersection? He blipped them, he said a couple of times, but turned them off because he did not want to upset the patients that were at the nursing home to which he was going, which in his view was half a block away. But that took maybe two or three seconds to get through the intersection. I agree. I agree, Your Honor. But... Finish your thought, counsel. That would not indicate that it was a recklessness. It would indicate the fact that he went forward and looked both ways to assure himself that it was not reckless. It was not a due disregard. It was, in fact, a regard for safety that he approached and went forward and passed the steps. Thank you. Thank you, counsels. We appreciate your arguments today, but more importantly, we do appreciate the quality of your briefs here. And I think both of you set out the issues.